The lone case on our call this afternoon is agenda number five, case number 106387, People of the State of Illinois v. Michael Diggins. Counsel may proceed. Thank you. Good afternoon, Your Honors. Erica Seaburn from the Illinois Attorney General's Office on behalf of the people of the State of Illinois. May it please the court. This court should reverse the judgment of the appellate court and hold that the center console of defendants' vehicle was not a case for purposes of the aggravated unlawful use of weapons statute. The purpose of statutory construction is to determine and give effect to legislative intent, and it was not the intent of the legislature that case be defined so broadly as to include the center console. Instead, this court should adopt the definition of case taken from the wildlife code that was approved by the legislature, that a case is a container specifically designed for the purposes of housing a gun that completely encloses the gun by being zipped, snapped, buckled, tied, or otherwise fastened with no portion of the gun exposed. Under this definition, the center console does not qualify as a case because it was not specifically designed for housing defendants' firearms. Using this definition that's parallel with the wildlife code is particularly appropriate in this case because it prevents hunters from being involved in the transportation than non-hunters would be. It's appropriate for us to do so in this case because the legislature expressed concern many times in the legislative debates that hunters not be unduly burdened by the unlawful use of weapons statute or the aggravated unlawful use of weapons statute, which for our purposes are essentially identical in language in terms of how the case exception works. As illustration, I would point Your Honors to the remarks of Representative Linder in the legislative debates from December 17th of 1999 on page 35, in which she says that she's had hunters call her who are worried about whether or not, even if they're following the wildlife code, they might be subjected to higher scrutiny under the unlawful use of weapons statute. Why is the word case ambiguous? Well, Your Honor, as this Court held in People v. Robinson, a term in a statute is ambiguous when it's subject to two or more reasonable interpretations. Now, here we have several appellate court cases that have tried to define the word case or the other words in the list. And the appellate courts generally seem to disagree about whether or not the terms in that list are ambiguous, and to what extent, and what the word case should ultimately mean. Some of the appellate courts have held that it's not ambiguous. Some of them have held that it is. I believe one of the justices in Bartimoe thought that a case didn't even need to completely enclose the gun, and that the term is ambiguous, but it is illustrative here. We generally assume that the appellate courts come to reasonable decisions here, and the fact that we have appellate courts that have disagreed about what the word means seems to indicate that there's ambiguity here. Also, the fact that the legislature ended up adopting a definition of the word case, which is very different from the general dictionary definition urged by the defendant, also indicates that there's ambiguity here. Examining the legislative history of the case. Should that ambiguity be defined or resolved in the favor of the defendant? I'm sorry. Is Your Honor asking should it or is it? Should it as a matter of proper construction? Is Your Honor thinking in terms of the rule of lenity? No. I'm thinking in terms of the defendant generally when there's an ambiguity, has it resolved in his favor? Well, Your Honor, I think that in general we don't resolve ambiguities in ways that tend to defeat legislative intent. And I think the state's solution to the problem is to look to the wildlife code. Yes, Your Honor. I think that's what the legislature intended us to do. It intended you to do that? It intended that we use the wildlife code definition in the statute. And where does it say that? There are several instances within the legislative debates in which one of the legislators, one of the co-sponsors in the House of Representatives, Representative Cross, uses the wildlife code definition when people are asking him what does case mean, and he says this is what case means. It's in the wildlife code. Well, Your Honor, did he say that during the debate on this act? Yes, he did. There are, by my count, three different instances during the various debates in which Representative Cross brings forward this definition in response to questions. There's December 17th at page 23, and then it's brought up again during the April 10th debates at pages 50 and 51 and 68. The legislative history here reflects that the legislators intended that case have this particular definition. This was stated several times without any sort of disagreement from any of the other legislators in response to this proffered definition. The second thing that we can learn from the legislative debates here is in terms of what the purposes of the statute was. And the legislature was very clear that the purpose here is to protect police officers and the public in terms of reducing gun crime. Now, adopting the wildlife code definition better serves this purpose than using the general dictionary definition that defendant urges and that the appellate court here adopted. And this is actually very well illustrated by the facts of this particular case, two facts in particular. The first is, Sergeant Boland, the officer who stopped defendant during this routine traffic stop, testified that as he was approaching the vehicle from the left side, he noticed that the lid of defendant's center console was slightly ajar, but he also testified that this didn't raise any red flags for him. The second fact is that the defendant testified, and this was borne out by the evidence, that he was keeping his wallet, which had his driver's license inside it, inside the center console of his vehicle on top of the guns and ammunition. Now, these two facts illustrate why it is that the wildlife code definition better serves the general purpose of protecting police officers. The center console conceals its contents very efficiently, much more so than a case which is specifically designed for the purpose of housing a gun. Therefore, it makes it, keeping your weapons in the center console makes it easier. Is it necessary to have a case that is specifically designed to handle the whole weapon? Yes, the wildlife code definition says it has to be specifically designed for the purpose of housing a gun. And for officer's safety, is the officer any safer by having it in a case designed to hold a weapon in the seat next to the driver? As opposed to having it in a locked armrest or glove compartment? Yes, Your Honor, I think it is. For the reason that I'm getting to, which is that if an officer is approaching during a routine traffic stop and he sees that there is a gun-shaped holster or even a box that might contain a gun or might contain anything on the passenger seat, the officer is at least aware that there is something that defendant possesses that is in his plain view. Whereas the center console conceals its contents so completely that the officer would have no way of knowing what was inside it. And this leads into the fact about the defendant keeping his wallet and his license in there. During a routine traffic stop, the officer expects that a driver is going to end up reaching into the center console or the glove compartment at some point. He's going to ask for the license. He's going to ask for the vehicle registration card. Those are normal things for a person to keep in either their glove compartment or center console. In this case, I thought the driver had presented a valid driver's license. No, Your Honor. I believe he had presented the insurance card, which he had retrieved from the glove compartment. Then when Sergeant Bowman asked for his license, that is when he informed the officer that he had a firearm owner's identification card because the license was in his wallet, which was in the center console on top of the firearms. But the fact that Sergeant Bowman in this case would have expected that the defendant would have to reach into his glove compartment or have to reach into the center console to retrieve these everyday items, which people generally keep in there, means that he was. What's meant by the phrase or other container in the statute? Well, Your Honor, it's the fourth item in a list. And I think it's fair to say that it's a catch-all container, which legislators commonly put at the end of the list. Is there anything in that phrase that leads us to conclude that it has to be specifically designed for carrying a gun? In the phrase other container? Yes, Your Honor. I think that under the canons of statutory interpretation, if we know that the first three items in the list are specific to firearms, then other container has to be as well. Otherwise, the principle of nos quatera sus, yes, in that items that are in a list should generally be construed to be similar. And also the rule against finding superfluousness, if other container isn't specific to firearms, if it really is just means container in that it's a box that holds something. Doesn't the statute earlier refer to things that aren't at least pointedly designed for carrying a gun? Shipping bag? It's a case firearm carrying box, shipping box, or other container. It doesn't. It certainly mentions carrying firearms, but it mentions other types of containers as well, doesn't it? Well, all three of the first three items in that list. They all go back to the wildlife code, and that means it has to be a bag designed for carrying firearms. I think that in the canons of statutory interpretation, in order to make this list read harmoniously, all of the items in that list have to be specifically designed for firearms. Now, in case that means specifically designed for housing firearms, for firearm carrying box, it could be specifically designed for carrying a firearm, for shipping box specifically designed to ship a firearm. So if what he had was an attache case, a locked attache case, that would not fall under the definition of other container? No, I don't believe so. Unless your attache case was specifically designed for carrying your gun around. What if you had a truck and you had a customized gun case or case in the vehicle, it was attached to the vehicle? Is that illegal? Is that legal under the statute? Well, Your Honor, I guess I would want to know, is the customized gun case in the, are we talking about? In the cab. In the cab. In the cab. Say this person likes to go target shooting, go to the gun clubs and shoot the weapon, has a case made for the cab of the truck, so put the gun in there and whip it up to take it to the gun club. Well, Your Honor, I don't want to, the answer is I'm not sure and I don't want to lead you astray. I think that would depend on how this Court construed the phrase specifically designed. Now, if the Court decided that specifically designed means, well, that's something that a manufacturer has to make, versus something that the guy Jerry rigged up in his garage, you know, that he meant to specifically, that he specifically designed to carry his firearm, but maybe it wasn't designed by an expert. So the answer is I'm not sure whether or not that would qualify. You know, following up on Justice Garment's question is then, does that necessarily mean that these items that are specifically designed for carrying guns and other weapons, are they to be portable? I mean, would it make sense then to say that a case or other container may be fixed, unmovable, part of a vehicle? Is it, you know, because in the car, it's a fixed container. And under the Wildlife Code's definition, in the limit case to something designed to house a weapon, doesn't this render the firearm carrying box superfluous? I mean, what is it for? Carrying it to someplace else from one place to another in a fixed container that's designed or one that's like Justice Garment mentioned, one that's designed to fit into a cab? Well, Your Honor, I think that we would be talking about two separate things here. I believe Justice Garment's question was about something that is meant to be a case but is attached to the vehicle so that when you're driving around, it's not bouncing around in the back of the truck. I think that that could be a case. I don't think that the portability distinction is necessarily a very good one because conceivably somebody could, you know, have a gun manufacturer, might design something that, you know, you could specifically add to your vehicle that would qualify as a case and perhaps the legislature meant for that to be included. I think Your Honor's question about a firearm carrying box, that versus case, they don't have to be the same thing. You seem to indicate that having a type of carrying case or box that an officer can identify as the type that would carry a weapon, that's the purpose of the legislature, of the legislation, so that the officer would be forewarned that there's a gun in his car. Using the example of the Attaché case, the Attaché case that looks like any other Attaché case, is designed by the owner of that gun to keep his weapon in. Is he violating the law? He gives no warning. I think that in the case of an Attaché case that was sitting on the passenger seat, at the very least the officer would be more on alert that there was some object that was within easy reach of the person, as opposed to the center console in which you don't know whether or not there's anything in there at all. And if he's more on alert, what then would he do? I think not being a police officer, I couldn't tell you specifically, but I think that I feel safe in saying that police officers in routine traffic stops would feel more at ease and feel safer having some idea that the driver had some firearms rather than having no information in that area. And the lawyer and the businessman was running around town all day with Attaché cases sitting in their passenger seat, a better serve, a better offer, they put it in the trunk, so the officer won't see it? Well, Your Honor, if something's in the trunk, then it wouldn't be immediately accessible. So it wouldn't have to qualify as a case at all. But that would also serve the purpose of officer safety, because if it's not immediately accessible to the driver, then there's no danger to the officer. I'm going to discipline Attaché cases every day by lawyers and business people. They throw it in the car when they drive away. No gun. Is he better off by putting it in the trunk rather than have an officer suspicious that he may have a weapon in there? Well, I don't. Isn't that putting a tremendous burden on ordinary citizens? To have the case? Well, I think Your Honor is talking about an ordinary citizen who isn't carrying a gun. So the question is, is this statute burdensome to non-gun owners because now they have to worry that a police officer might be particularly nervous when they're approaching? Yes. Well, I think that adopting the wildlife code definition doesn't change that, because at this point, when an officer is approaching anyone right now, no matter what definition of case is, if they see something on the passenger seat, then they always have that in the back of their mind that there could be something in there. Now, I don't know how extreme that concern is, but I don't think that that concern is changed much by which definition of case we choose to adopt here. I'd just like to make one final point. There has been some discussion. And this is going to sound like a strange question, but I just want you to put it together. Okay. Can you define for us the type of case that would be covered by this statute under your argument? Well, Your Honor, you want me to describe what the case would look like? Right. Well, there could be a number of things, but as long as it was specifically designed for the purpose of housing the gun, it completely encloses the gun so that no portion of the gun is showing. It has some sort of, you know, some sort of shutting mechanism, a zipper, snaps, as long as it, you know, is fastenable. It could conceivably take a number of forms. It could be something that is, you know, a case that is actually gun-shaped that, you know, just zips up. It could be a box that has, you know, specific indentations inside it for the gun to ensure that the trigger doesn't go off accidentally. It could have Smith & Wesson stamped on the top where it might not. I think there are a number of things that could qualify under the Wild Left Code definition, so I don't think it's particularly burdensome. So if the pickup truck that Justice Garment was referring to had a center counsel that had an indentation for a revolver, then it becomes a case under your definition? Well, Your Honor, I think that it would go back to the same problem I outlined for Justice Garment about what specifically design means. No, it was specifically designed to hold a gun. It's a center counsel specifically designed to hold a gun. It has an indentation. You lay the revolver in there or a shotgun or whatever it is, but it looks like from the outside like any other counsel. That's a case. I think as long as that, you know, follows the Wild Left Code definition, it would be. But I think this leads me into my final point, which is that there has been some discussion both here today and in the briefing about, you know, what's the best way of carrying a firearm? Is this safer than this? And I think the broader point here is that in the end, it's the legislature's job to draw the distinctions about what is and what isn't an acceptable way of transporting firearms. As this Court has held repeatedly, the legislature has to balance the advantages and disadvantages of a statutory scheme, and the Court doesn't overturn or rewrite statutes just because we might happen to disagree with the legislature's policy determinations. So the defendant might not think that the center counsel is an unsafe place to carry a gun, but it's the legislature's job to make that decision. Counsel, isn't a shipping box a rather generic looking box? Well, Your Honor, I think that we'd be talking about a firearm shipping box, specifically designed for a firearm. I don't know what it would necessarily look like. I think that it would be the interior of the firearm shipping box that would be. So it wouldn't be the exterior then? I don't know. It might or might not. If it does not, that would defeat the officer's safety concern you were raising earlier. Well, I think it goes back to the same question that Justice Freeman was asking about the attache case. Even if it's not obvious from looking at the outside of it that, hey, this is something that was specifically designed for housing the gun, at the very least it's better for the officer than the center counsel is. Unless Your Honors have any other questions at this time. Thank you. You may proceed. Thank you, Judge. May it please the Court, Chief Justice, and Counsel, My name is Tiffany Ritchie, and I am here on behalf of Michael Diggins. I am here to urge this Court to affirm the decision of the Third District and People v. Diggins wherein the Court made three crucial legal determinations. First, that the language of the Illinois Aggravated Unlawful Use of Weapons Statute is unambiguous. Second, that pursuant to this unambiguous language, the center counsel of a vehicle is a case within the meaning of Illinois law. What's the difference, Counsel, between a case and a container? Well, pursuant to the plain meaning of the word case, using the definition as defined by People v. Diggins and other courts who have addressed the issue, it's a box or receptacle to container hold goods. A container is similarly a receptacle to container hold goods. If you look at the dictionary definitions, they're very similar. Would that render in the statute or other containers superfluous, then, if the definitions are substantially similar to case? Yes. Your whole argument is based on the fact that there's no ambiguity. Her argument is based on the fact that there is an ambiguity. Sure. If we find there to be an ambiguity, right, we can look at other aides of statutory construction. We can look at Tom Cross's idea and say, hey, I'm going to read this in to the record. Case is under the wildlife code. Absolutely. And admittedly, the phrase other container does inherently suggest some superfluity. However, that's simply one canon of construction, and the court has to decide whether or not to impose that or whether or not its imposition actually would affect the outcome one way or the other. And contrary to the argument that the state makes, it's no less superfluous to suggest that the term firearm, any firearm container is less superfluous than the phrase other container. Because in either event, the end phrase is a catchall that would eliminate the necessity for the first term and the second two phrases. If we're going to say that any firearm container would suffice, there would be no reason to say that you needed to have a case, a shipping box, or a carrying box. Similarly, if you're going to say other container, there would really be no reason to say case, firearm shipping box, or I'm sorry, firearm carrying box or shipping box. The logical conclusion that can be reached from the fact that they included other container is that they wanted the statute to be broad. They wanted the, and actually, if you look at the legislative history of the way that this language was actually created, it's somewhat confusing. You have to go back to 1981 and look at the first amendment, or one of the amendments to the Illinois Criminal Code of 1961. The amendment itself was proposed by Representative Cullerton, and it did not actually contain the language at issue in this case when it was first created. Rather, it was added via Amendment No. 1 proposed by the Second Judiciary Committee. And that language was almost identical to the language at issue in this case, with the exception of the last phrase, other container. In that initial amendment, it said other secure container. Now, the word secure was omitted via Amendment No. 3 by Representative Cullerton. He, in discussing the reason that he omitted the language, or the word secure, explained that he wished to eliminate any requirement that a weapon be carried in a secure container. He explained that they deleted the word secure before the term container to eliminate the ambiguity that the word secure created. And he specifically said, quote, you don't have to carry the weapon in a secure container. It can just simply be, quote, any container. So the legislative history, if you actually look into the intent of the person who actually created the bill, he indicated that he wanted that term to be very general in nature. That was his exact intent. What about shipping bags or firearm carrying bags? Aren't they also cases? Yes, Judge. I believe that there's much discussion in the legislative history about the different interests that were to be represented. There were the hunters that were interested in making sure that their rights were protected. There were the legislators that were desiring to ensure that the rights of ordinary citizens weren't looked over. And then there are the people who wanted to make sure that criminals, gangbangers, was a term that was used quite frequently in the legislative history, that those people didn't have the right to access weapons in a way that would be harmful to police or the public. So shipping box, hunters expressed concerns that if they had the weapons in their car in a shipping box, taking it to be mailed to themselves or to a relative, somebody for a present, they wanted to make sure that they weren't going to be held accountable in that type of situation. Carrying box is just a different type of commonly accepted transportation method. And I believe that they included all of the broad phrases simply because the legislature at the time was very concerned about making sure that the language of the statute wasn't given a narrow interpretation. But the statute does say case, comma, not case, colon, right? Correct. Case, firearm, carrying box, comma, shipping box, comma, or other container. Correct. So the argument that wouldn't that go to the argument that case has some type of term of art associated with it that is separate and apart from all these others which are encompassed in the word case? No, Judge. The only term out of the four that has a specific modifier is the second phrase, carrying box. The legislature specifically took it upon themselves to modify that phrase in order to let everybody know that they wanted the carrying box to be firearm specific. The other three are left to have their general plain meanings. And it would be different perhaps if the word firearm came as a modifier to the first word, case, if it said firearm, case, carrying box, shipping box, and other container. Or if it came as a modifier to the last phrase, if it said case, carrying box, shipping box, or other firearm container. The fact that it comes in the middle of the four phrases indicates that the legislature specifically intended that to be modified but did not intend the other three to be modified similarly. I'm only bringing that up not for purposes of saying what case means, but only whether we can go further than the word case. To me it seems pretty clear. There either is an ambiguity or there isn't. And counsel's argument is completely based on there being an ambiguity. Correct. Exactly. And I think that that's a very important issue to address. Because the assumption that there's an ambiguity is a very dangerous assumption to make. We can't just assume when we're dealing with statutes like this that there's an ambiguity because of something that happened after the statute was created. We have to proceed along a diligent process to ensure that the statutory language is in fact ambiguous. Now this seems like a simple concept. However, it is unfortunately often misapplied. Only one out of four courts that have reviewed this issue have properly performed this step. And that's the third district in People v. Cameron. The fourth district in People v. Diggins. The fourth district in People v. Cameron apparently concluded that the statutory language was ambiguous but failed to address the issue and simply moved on to an evaluation of statutory construction. So we have no indication as to the origin of the apparent ambiguity that they found in the statute. Now the court in People v. Smythe actually proceeded on the ambiguity analysis. They determined that the statute was unambiguous. They looked for the plain meaning of the terms. They defined the plain meaning of the terms. And then after making those precise legal determinations, they moved into an evaluation of statutory construction and legislative history and ended up attributing the term with a meaning that contradicted its plain meaning. And the first district in People v. Williams relied on the faulty reasoning in Cameron and Smythe. And those are the only four cases that we have today. These cases demonstrate how easy it is to vary from a statute's plain meaning, even when no ambiguity exists. Such variance is not allowed by the law and it should be avoided at all costs. There are certain steps that must be followed. The first step is to look at the statute to see if there are any definitions provided by the statute regarding the disputed terms. Neither the Illinois Criminal Code of 1961, the overarching statute, or Article 24, Deadly Weapons, contains any definitions that are relevant to the terms at issue in this case. In the absence of specific statutory definition, we must look to the plain meaning of the disputed terms. As acknowledged by the first and third districts, each of the relevant terms in this statute has a plain meaning that is not subject to reasonably differing interpretations. As articulated by Smythe and accepted by Williams and Diggins, the term case is patently unambiguous. It has a plain meaning. It is a box or receptacle to contain or hold something. It simply indicates an area of space that works to segregate some things from other things. Now, admittedly, case is a general term. But generality of a word does not qualify it as being ambiguous. We do not declare the general word dog, for example, ambiguous because of incidental differences between a Great Dane and a Chihuahua. Such a strained understanding of the word ambiguous invites us to defy common sense. There is nothing in the meaning of the word case that either implies portability or a specific purpose for which a specific type of case is intended. Speaking of purpose, does the fact that the purpose of the UUW statute is to protect the public and the police, does that have any import in our decision at all, or are we still back with the same ambiguity versus non-ambiguity? It's certainly something to consider, Judge, but the question is, does one result or the other actually affect the safety of the police officers or the public? That is my next question. Why don't you address her argument with respect to the center concept? Sure. If you look, you know, it would behoove everybody to type into Google gun case. Just type it in. A lot of gun companies will come up. And you'll begin to get an understanding of what exactly is available with regard to gun cases. There are various different types of gun cases. There are metal gun cases. There are locked gun cases. There are secure gun cases. There are plastic gun cases. There are vinyl gun cases. Some of them are very flimsy. They have a very thin foam interior with no slot for a firearm or ammunition, and they have a flimsy zipper that zips up the side. And pursuant to the state's argument, that is a gun case. That is sufficient to avoid getting a felony under the Illinois Aggravated Unlawful Use of Weapons statute. Now, that's the first point to be made. But the second point to be made is to evaluate that in the context of how these scenarios play out. And generally speaking, like the case in this and the situations in Cameron, Smyth, and Williams, a defendant is pulled over for a routine traffic stop or a routine traffic violation, and the officer approaches the vehicle. The question is, is the officer any safer when the person in the vehicle, be it the driver or the passenger, has a small portable gun case sitting on their lap with the weapon and the ammunition inside? All they have to do is either flip open the box or unzip the container, and they're immediately able to access that firearm. Is the officer safer from that person than they are from the person who has the gun locked in the glove box and the keys tossed in the back seat? Or the person who has the gun locked and the gun and the ammo locked in the center console and the keys on their key chain? And the common sense answer to that question is no. There is not an added element of safety provided by keeping these firearms in cases that were specifically designed to house guns. The real issue with regard to ensuring that a person keeps the gun and the ammo in a case is an issue of accessibility. The legislature was attempting to simply put some stop between the person and their ability to pull out that weapon and use it in a dangerous way. That's an interesting point. In this case, there's a question of fact as to whether that console was even locked, right? Correct. So you would assert that if indeed the police officer is right, that it was just hanging there with the key in it and not locked, it's not in as safe a situation as somebody having it in a firearm case, right? No. I still do not agree with that only because I still believe that it's more easy for the person with a small portable container sitting on their lap to access that, or it's just as easy as it is for the person to open the console, fumble for the ammunition, fumble for the gun, pop it in, and get it ready for use. And in either event, if the person is ‑‑ Can I ask a question? Oh, sure. I promise. I've done that before. I promise it didn't mean a lot. But anyway, the last question. Part of the argument is that the officer may not suspect that anything is awry when someone goes into a console to grab their wallet, for example, and pull out a license, and where if they get to the car and somebody has a case and they're seeing them unzip it, that perhaps there's a little bit more suspicion attached to that. The suggestion that that is a situation where the police officer would be ‑‑ well, I'm not sure if they're suggesting that that would put the police officer on notice or if that would be more dangerous because they think the police officer is actually reaching for the license. But in either event, how is that more dangerous than the person who has the small, portable gun case on their lap or underneath their seat or stuck in the area between the console and the driver's seat? How is it any more dangerous than that? Because the officer would have no idea that there was a small, portable container hidden beside the driver of the vehicle. There's no way the officer could know that. Just like the officer might not be able to tell that the person has the gun in the console or in the glove compartment. The officer really isn't going to have an opportunity to protect himself from somebody who wants to use that weapon against him. All that the officer is going to be able to do is take advantage of that momentary inaccessibility intended by the legislature while the person has to take out the gun, snap it in, and get it ready for use. And that is going to happen whether or not it's in the small gun case or it's in the glove box or the center console. And, in fact, if the person has to lean over and rummage around for all the ammunition and rummage around for the gun and then lean back over and put it together, the officer who's constantly parked behind the vehicle and looking into the car from the back is much more likely to be able to see that activity take place than he is to be able to see the covert putting together of the gun if the gun case is sitting right there on the person's lap. Now, moving on with the plain meaning evaluation that I really do think is crucial to this case. The plain meaning of the term case is something we've already discussed, but the plain meaning of the term box is very similar. A container, case, or receptacle, usually rectangular that may have a lid or removable cover.  And a container is a receptacle to hold goods. These are all plain meanings found in ordinary dictionaries. The center console at issue in this case was a three-sided rectangular box with a liftable lid that, when closed, formed a rectangular enclosure. It also had a latch and a separate lock. Under the plain meaning of the term case as defined by the plain meaning of the terms box and receptacle, this center console is a case. It also qualifies as a container, pursuant to the plain meaning of the term container. The determination of case is a legal question, is it not? Correct. So it's not a case that it's not a situation where this case goes back. I know the jury sent out a question to the judge about what does it mean. It's not up to the jury to decide whether it's in a case. It's up to the court to decide that as a matter of law. Is that correct? Correct. The only issue with regard to the standard of review comes when you get to the question of how does the court evaluate the trial court's refusal to provide a certain jury instruction. Now, the state in this case and Mr. Diggins has argued that the de novo review is appropriate. The court in People v. Diggins applied an abuse of discretion review. And they did that because typically when a reviewing court examines a lower court's decision to provide a particular jury instruction or not, it's reviewed under abuse of discretion. But other courts who have examined the issue have determined that in a case like this one where there is an issue of law that critically determines whether or not the instruction would have been given or not, it's a de novo standard of review. Now, the state does not challenge the appellate court's finding that the word case has a clear and plain meaning. The state does not offer us any alternative definition for the word case to demonstrate that this meaning in a spatial context would confuse reasonable people. The state would have us believe the word case is ambiguous, not because it is, but because that is the result that advances its cause in this matter. The state has declared by fiat that the language is ambiguous. However, it has never walked through the logical process of determining its ambiguity. It has implied no standards. Rather, it has simply jumped to a conclusion. And it has jumped so hard and fast, it jumped right over the criteria that we use to determine ambiguity. It's logically unsound to point to the decisions that appellate courts have made after determining that the language of the statute is unambiguous to define the term as unambiguous. Like the court in Peoples v. Smyth determined that the statute was unambiguous, but then went into an inquiry of what the meaning would be if we were to look at the legislative history. Whatever they determined that meaning to be is irrelevant to the determination of whether or not the term itself is ambiguous. You can't go to the second step if you've already decided the first step. So the state's reasoning in that regard is unreasonable. Further, it's unreasonable to suggest that there would not be an inherent explanation of ambiguity. There must be an inherent element of ambiguity. Thank you, Your Honors. Thank you, Your Honors. I'd like to begin by just touching briefly on the forfeiture issue, since there was some discussion about whether or not this console would And as we explained in the reply brief, that argument would be forfeited since the end of trial during the post-trial motions and then the appellate court defendant was arguing exclusively that the center console qualified as a case. I'd like to return briefly to Justice Freeman's question from earlier about the attache case and whether or not a person who wasn't carrying a gun in the attache case needed to be more worried about police officers being nervous about him. And I think in that particular situation, if we have a person who isn't carrying a gun and they're not making any furtive movements towards the attache case, there's not necessarily anything that would make a police officer nervous about that situation. Earlier, Justice Burke and Justice Carmeier brought up questions about having a portion of the vehicle being specifically designed to hold a gun. I believe Justice Carmeier talked about a console. Justice Burke was talking about something in the back of a pickup truck. In the case of something that was in the back of the truck, it wouldn't be immediately accessible. So therefore, the person wouldn't need to worry about whether or not it qualified as a case. In terms of Justice Carmeier's question, I guess the answer to that is if you were going to specifically design a portion of your vehicle to house your firearm, it might be a good idea to specifically design it so that your firearm is broken down. Because then you would qualify under the broken down exception and you wouldn't need to worry about either officer safety or whether or not the officer console would qualify as a case. Counsel touched briefly on the 1981 debates and the statements of Representative Cullerton during one of the earlier versions of the statute. And in that particular debate, there was an amendment which deleted the word secure from secure container so that it could just be any container. And Representative Cullerton struck the word secure because he thought that the word secure was ambiguous. That amendment obviously doesn't affect the word case or the other items in the list, and we're not construing the meaning of other container here. And also, given that that particular version of the statute has been struck down since and then was repassed, those legislative debates are obviously less relevant than the more recent ones from 1999 and 2000 since that's the version of the statute that we are now construing here. Counsel touched briefly on the question of why the legislature didn't put the word firearm in front of case in the list and why they didn't write the wildlife code definition into the statute. Now, I would argue that they didn't do either of those things because they didn't think it was necessary. In the legislative debates, Representative Cross repeatedly brought up the wildlife code definition, and it appears from context that he and the other legislators didn't think that it was necessary for them to write a specific definition or write the word firearm in front of the word case because they later on would look at their debates and know what it is that they meant without them having to write it into the statute. Finally, in terms of the question of ambiguity, we've talked about this at length, about whether it's ambiguous or whether it's not, and how the canons of statutory construction will work in terms of noscator associates versus the rule against superfluousness. And I think at this point I would suggest that if the court feels that the time that we need to look to the legislative debates for guidance and the legislative history reflects an intent for the wildlife code definition to be used. Finally, in terms of some policy questions, in terms of whether or not the specifically designed case is safer for transporting a gun, there's also the issue of if the case is specifically designed to transport a gun, there's less likely to be damage to the gun during transport, and it also would prevent accidental discharge of the gun if somebody had thought that the gun was unloaded but accidentally left around in the chamber. In terms of the immediate accessibility that counsel says that the legislature was intending to put a barrier of accessibility between the driver and the police officer, really it's a matter of keeping the situation from escalating. If the person has their gun in a case, no matter how flimsy counsel might think it is, if the person doesn't have any intent to use it against the police officer, then it doesn't really matter how flimsy it is. The point is to keep a routine traffic stop from turning into something considerably more tragic. And on that point, I would just remind the court that in terms of all of these policy determinations, in terms of, you know, what type of case, be it how it should be zippered or tied or buckled or what it should be made out of, those do come down to policy determinations, and, of course, that's the legislature's prerogative. If the court has no other questions, we would urge the court to reverse the decision of the appellate court. Thank you. Thank you. Thank you both. Case number 106367, People of the State of Illinois v. Michael Diggins.